United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN JEROME WILLIAMS,

        Plaintiff,

    v.

E HAZEL, et al.,

        Defendants.

Case No. 16-cv-01136-HSG

**ORDER GRANTING MOTIONS TO DISMISS**

Re: Dkt. Nos. 10, 25

Plaintiff, a California prisoner currently incarcerated at Ironwood State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983. The Court found that, liberally construed, the amended complaint stated a cognizable claim for denial of access to the courts against correctional officers Pelican Bay State Prison ("PBSP") Transportation Sergeant Hazel, PBSP Sergeant Davis, PBSP Sergeant Chandler, PBSP Associate Government Program Analyst Bramucci, and Pleasant Valley State Prison ("PVSP") Associate Government Program Analyst Vierra, and a cognizable claim for denial of due process against Sergeant Hazel. Dkt. No. 9 at 4–5. Now before the Court are two separate motions to dismiss, one filed by Sergeant Davis, Sergeant Chandler, Analyst Bramucci, and Analyst Vierra (Dkt. No. 10), and the other filed by Sergeant Hazel (Dkt. No. 25). Defendants argue that they are entitled to dismissal of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's complaint fails to state a claim or, in the alternative, that Defendants are entitled to qualified immunity. Dkt. Nos. 10 and 25. Plaintiff has filed oppositions to both motions (Dkt. Nos. 17 and 29), and Defendants have filed replies in support of their respective motions (Dkt. Nos. 20 and 30). For the reasons set forth below, the Court GRANTS the motions to dismiss.

//

**BACKGROUND**

According to the amended complaint, Plaintiff's constitutional right to access the courts was violated when Defendants failed to timely deliver his property, which included a court filing, thereby causing him to miss a court deadline in an unrelated medical malpractice case. Plaintiff alleges that his due process rights were violated when Sergeant Hazel deprived him of his legal materials without a hearing.

**A.** **Underlying Medical Malpractice Case**

On September 18, 2008, while Plaintiff was incarcerated at Calipatria State Prison, he underwent oral surgery to remove his four wisdom teeth. Dkt. No. 7-1 at 11. In 2013, Plaintiff learned that the 2008 dental surgery had not been completed properly, resulting in tooth, bone, and gum decay. *Id.* X-rays taken in February and June 2013 indicated that a root tip had been improperly left in Plaintiff's gums during the 2008 surgery. *Id.* On August 28, 2013, Plaintiff had corrective oral surgery and sustained further injury, pain and suffering. *Id.* at 16.

On September 12, 2013, in preparation for potential litigation and to seek compensation for his injuries, Plaintiff requested his dental records. Dkt. No. 7-1 at 16. Plaintiff received these records on January 14, 2014. *Id.* On February 20, 2014, Plaintiff filed an application with the California Victim Compensation and Government Claim Board ("VCGCB") regarding the 2008 oral surgery, alleging that California Correctional Health Care Services ("CCHCS") staff had committed medical and dental malpractice, and seeking leave to present a late tort claim. *Id.* at 14–19. On May 15, 2014, the VCGCB denied Plaintiff leave to file a late tort claim. *Id.* at 8.

On or about December 2014, Plaintiff filed a civil action in Monterey County Superior Court, pursuant to Section 946.6 of the California Government Code, requesting relief from the claim presentation requirement set forth in the California Government Claims Act ("CGCA").[1] Dkt. No. 7-1 at 21–23. On June 12, 2015, the Monterey County Superior Court denied Plaintiff's

---

[1] Before a person can sue a public entity or public employee for money damages for actions taken within the scope of the person's employment, the CGCA requires the person to first present the claim to the public entity. *See* Cal. Gov't. Code §§ 810 *et seq.*; *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969); *Cal. v. Sup. Ct. (Bodde)*, 32 Cal. 4th 1234, 1240–44 (Cal. 2004).

petition for relief. *Id.* at 7-1 at 3–4. Judgment was entered on July 1, 2015. *Id.* at 4. On July 5, 2015, while Plaintiff was housed at Salinas Valley State Prison ("SVSP"), Plaintiff received the judgment and order denying his petition for relief. Dkt. No. 7 at 3–4. Plaintiff mistakenly believed that the deadline to appeal this denial was July 12, 2015, whereas the correct deadline was August 12, 2015. *Id.* at 4.

**B.    Delay in Receiving Notice of Appeal**

On July 6, 2015, Plaintiff prepared a notice of appeal ("NOA"), dated July 6, 2015, and SVSP Officer Gonzalez made four copies of the NOA. *Id.* Plaintiff intended to place the NOA in the outgoing mail later that day. *Id.* Later that morning, SVSP Officer White informed Plaintiff that he was being transferred to PBSP within the hour and instructed Plaintiff to pack up his property. *Id.* Plaintiff informed Officer White that he needed to mail out certain legal documents that evening to comply with a court deadline. *Id.* Officer White informed Plaintiff that he would arrive at PBSP within two days and that Plaintiff could mail out his legal documents at that time. *Id.* En route to PBSP, Plaintiff had a layover day at PVSP.

Upon arriving at PBSP, Plaintiff learned that his property had not arrived with him. Dkt. No. 7 at 4. Sergeant Hazel informed Plaintiff that because Plaintiff had too many boxes of property, Plaintiff's property was still at PVSP and would arrive within a couple of weeks, maybe a month. *Id.* Plaintiff informed Sergeant Hazel that his property contained legal documents that had to be filed to meet a court deadline. *Id.* Sergeant Hazel and other PBSP correctional officers advised Plaintiff to file an appeal. *Id.*

On July 8, 2015, Plaintiff submitted a CDCR Form 22 Request for Item to Sergeant Davis, requesting that his property be delivered immediately so that Plaintiff could comply with a July 12, 2015 court deadline. Dkt. No. 7 at 4 and Dkt. No. 7-1 at 28. Sergeant Chandler responded to the CDCR Form 22, and informed Plaintiff that PBSP had not received any of Plaintiff's property and directed Plaintiff to submit a missing property form to his prior facility. *Id.*

On July 9, 2015, the following day, Plaintiff submitted CDCR Form 602 Inmate Appeal, PBSP No. 0-15-01713, to Analyst Bramucci requesting that his property be returned to him immediately so that he could comply with a July 12, 2015 court deadline, and requesting that

PBSP provide him with an affidavit stating that he did not receive this property on July 8, 2015, which rendered him unable to meet the court's July 12, 2015 deadline for filing an appeal. Dkt. No. 7 at 4 and Dkt. No. 7-1 at 31–33. On July 10, 2015, Analyst Bramucci forwarded grievance PBSP No. 0-15-01713 to the appeals coordinator at PVSP, who assigned it the log number PVSP No. 0-15-00960. Dkt. No. 7 at 4 and Dkt. No. 7-1 at 30–33.

On July 15, 2015, Plaintiff's property arrived at PBSP but was not delivered to him. Dkt. No. 7 at 7.

On July 21, 2015, Analyst J. Vierra cancelled grievance PBSP No. 0-15-01713 / PVSP No. 0-15-00960, noting that the grievance was resolved because, on July 20, 2015, Sergeant Carr had informed Analyst Vierra that Plaintiff's property had been sent to PBSP via Golden State Overnight on July 14, 2015. Dkt. No. 7 at 5 and Dkt. No. 7-1 at 36. Plaintiff received Analyst Vierra's notice of cancellation on August 2, 2015. Dkt. No. 7 at 5. That same day, Plaintiff appealed the cancellation because Plaintiff still had not received his property. *Id.* In his appeal, Plaintiff stated that the court deadline had passed and that CDCR officials had failed to provide him with an affidavit to file with the court to excuse his late-filing. Dkt. No. 7-1 at 32. Plaintiff stated that his case was now time-barred. *Id.*

On August 3, 2015, Analyst Bramucci forwarded Plaintiff's appeal back to PVSP. Dkt. No. 7 at 5 and No. 7-1 at 38. On August 13, 2015, Analyst Vierra cancelled the appeal, and directed Plaintiff to appeal the cancellation of the grievance by filing a separate grievance. Dkt. No. 7 at 5 and Dkt. No. 7-1 at 40.

On August 25, 2015, Plaintiff submitted a second CDCR Form 22 Request for Service to Sergeant Davis, requesting that his property be delivered to him. Dkt. No. 7 at 6 and Dkt. No. 7-1 at 5. In this Form 22, Plaintiff stated that the court deadline had passed. Dkt. No. 7-1 at 5. On August 26, 2015, Sergeant Chandler responded to the Form 22 stating that PBSP was "working on all property" and unable to provide an estimate as to when Plaintiff could expect his property. *Id.* That same day, Plaintiff filed a new CDCR Form 602 Inmate Appeal, No. PVSP-0-15-01125, with PVSP correctional officials, again requesting the return of his property. Dkt. No. 7 at 5 and Dkt. No. 7-1 at 42. In this Form 602, Plaintiff stated that he had missed a court deadline and been

4

denied access to the courts. Dkt. No. 7-1 at 42.

On September 15, 2015, Sergeant Davis delivered Plaintiff's property to him. Dkt. No. 7 at 6.

On September 21, 2015, Analyst Vierra interviewed Plaintiff by telephone regarding grievance PVSP No. 0-15-01125. Dkt. No. 7 at 5. On September 22, 2015, grievance PVSP No. 0-15-01125 was granted in part at the second level of review in that PVSP acknowledged that it had failed to address Plaintiff's request for an affidavit regarding the missing property. Dkt. No. 7 at 5 and 46–47. The second level decision reassigned grievance PBSP No. 0-15-01713 / PVSP No. 0-15-00960 back to the first level of review. *Id.* Plaintiff appealed this decision to the director's level of review and on November 3, 2015, Office of Appeals Chief Voong determined that there was no issue to address relative to PVSP No. 0-15-01125 because the second level decision allowed Plaintiff to resubmit grievance PBSP No. 0-15-01713 / PVSP No. 0-15-00960. Dkt. No. 7 at 5 and 48. Plaintiff was informed that if he was dissatisfied with the second level review decision with respect to grievance PBSP No. 0-15-01713 / PVSP No. 0-15-00960, he could submit that grievance for third level review. Dkt. No. 7 at 5 and 48.

## C.      Plaintiff's Additional Allegations

Plaintiff makes the following additional allegations.

Plaintiff alleges that Sergeant Hazel made the personal decision to leave Plaintiff's property at PVSP and not place it on the bus that transported Plaintiff from PVSP to PBSP, and that Sergeant Hazel failed to take any steps to locate, obtain and issue Plaintiff's property to Plaintiff after learning that Plaintiff required his property to meet a court deadline. Dkt. No. 7 at 6.

Plaintiff alleges that Sergeant Davis and Sergeant Chandler, who both are directly responsible for issuing property to inmates upon their arrival at PBSP, failed to locate, obtain and issue Plaintiff's property to him despite knowing that he required his property to meet a court deadline. Dkt. No. 7 at 7–8.

Finally, Plaintiff alleges that Analysts Bramucci and Vierra failed to forward Plaintiff's inmate appeal concerning his property and court deadline to the appropriate staff at PBSP, and failed to notify the appropriate PBSP staff that Plaintiff's property had arrived at PBSP on July 15,

2015, and failed to instruct the appropriate PBSP staff to immediately release Plaintiff's property to him.  Dkt. No. 7 at 8–9.

## DISCUSSION

**A.      Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss should be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must construe the alleged facts in the light most favorable to the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The Court must construe *pro se* pleadings liberally.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended*, 275 F.3d 1187 (9th Cir. 2001).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002) (citation omitted).  The Court may, however, consider the following documents without converting a motion to dismiss into a motion for summary judgment:  (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, *see Branch*, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, *see Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, *see Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

**B.      Requests for Judicial Notice**

Defendants have requested that the Court take judicial notice of sections 3084.1 and 3190 of the California Code of Regulations, title 15, as well as sections 54030.5, 54030.13.1 and

54100.23.2 of the California Department of Corrections and Rehabilitation ("CDCR") Department Operations Manual ("DOM"). Dkt. No. 11. Plaintiff seeks to join Defendants' request for judicial notice, Dkt. No. 17 at 9, and also requests that the Court take judicial notice of sections 14010.19, 54010.12.2, 54010.4, 54030.7.1, and 54030.10.2 of the DOM, *id.* at 10–12 and 28–45.

When considering a motion to dismiss, a court does not normally look beyond the complaint in order to avoid converting a motion to dismiss into a motion for summary judgment. *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749. F.Supp.2d 1022, 1024 (N.D. Cal. 2010). However, a court may take judicial notice of material that is submitted as part of the complaint or is necessarily relied upon by the complaint, as well as matters of public record. *Lee*, 250 F.3d at 688–89. Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Courts routinely take judicial notice of state regulations which are readily ascertainable, *Bd. of Public Works of Maryland*, 426 U.S. 736, 742 n. 4 (1976), and routinely take judicial notice of records of state agencies, *see City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."). Accordingly, the Court GRANTS the requests for judicial notice filed by both parties, and takes judicial notice of (1) 15 Cal. Code Regs. §§ 3084.1 and 3190, because they are state regulations which are easily ascertainable; and (2) DOM §§ 14010.19, 54010.12.2, 54030.10.2, 54010.4, 54030.7.1, 54030.5, 54030.13.1, and 54100.23.2, as they are matters of public record.

## C. Access to the Courts Claim

The First Amendment right of access to courts guarantees the right to meaningful access to the courts. *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) *overruled on other grounds as stated by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The Ninth Circuit has traditionally differentiated between two types of access to court claims: those involving prisoners' right to affirmative assistance and those involving prisoners' rights to litigate without active interference. *Id.* at 1102.

7

A prisoner's constitutional right to litigation assistance is limited to the tools prisoners need in order to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement. *Silva*, 658 F.3d at 1102 (citing *Lewis v. Casey*, 518 U.S. at 355). The right to such assistance is limited to the pleading stage. *Id.* The state is not required to enable the prisoner to discover grievances or to litigate effectively once in court. *See Lewis*, 518 U.S. at 354.

In contrast, a prisoner's constitutional right to litigate without interference encompasses the First Amendment right to petition the government by filing civil actions that have a reasonable basis in law or fact, and extends beyond the pleading stage. *Silva*, 658 F.3d at 1102. This right does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from erecting barriers that impede the right of access of incarcerated persons. *Id.* The Ninth Circuit therefore has held that "prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials." *Id.* (emphasis in original).

Plaintiff categorizes his First Amendment claim as an "active interference" claim, distinguishing it from an "affirmative assistance" claim:

> Plaintiff Williams is not alleging that he was denied access to the courts because he was deprived of the required "tools" and "assistance" the Lewis court held to be provided to inmates challenging their convictions or conditions of confinement. Plaintiff Williams alleges he was denied access to the courts because each of the named Defendants intentionally and deliberately "obstructed" him from having "meaningful access to the courts" and "interfered" with his right to "seek redress" and file a "grievance."

Dkt. No. 17 at 19; *see also* Dkt. No. 29 at 9. The "active interference" claim, as described by Plaintiff, is Defendants' failure to take particular affirmative steps to track down Plaintiff's property to ensure Plaintiff met his court deadline. Plaintiff does not allege that Defendants deliberately withheld his property for the purpose of causing him to miss a court deadline.

Rather, Plaintiff alleges that Sergeants Chandler and Davis, and Analysts Bramucci and Vierra, failed to do legally required acts that caused the First Amendment violation. *See* Dkt. No. 17 at 11 (alleging that Sergeant Chandler was more concerned with backlog of all inmate property

8

than finding Plaintiff's property), at 13–14 (alleging that Sergeant Davis failed to direct Sergeant

Chandler to locate and deliver Plaintiff's property), at 15–16 (alleging that Analysts Bramucci and

Vierra failed to assist Plaintiff in resolving his property claim), at 11–12 (listing CDCR

regulations allegedly violated by Sergeants Chandler and Davis), at 14–17 (listing CDCR

regulations allegedly violated by Analysts Bramucci and Vierra). Similarly, Plaintiff argues that

Sergeant Hazel caused the First Amendment violation when he decided to leave Plaintiff's

property at PVSP and failed to do legally required acts. Dkt. No. 29 at 7–9.

For the reasons set forth below, Court finds that Defendants are entitled to qualified

immunity on Plaintiff's First Amendment claim.

### 1. Qualified Immunity

Qualified immunity is an entitlement, provided to government officials in the exercise of

their duties, not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194,

200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The

doctrine of qualified immunity attempts to balance two important and sometimes competing

interests — "the need to hold public officials accountable when they exercise power irresponsibly

and the need to shield officials from harassment, distraction, and liability when they perform their

duties reasonably." *Pearson*, 555 U.S. at 231. The doctrine thus intends to take into account the

real-world demands on officials in order to allow them to act "swiftly and firmly" in situations

where the rules governing their actions are often "voluminous, ambiguous, and contradictory."

*Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). "The purpose of this doctrine is to recognize

that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to

make difficult decisions in challenging situations, thus disrupting the effective performance of

their public duties." *Id.*

To determine whether a government official is entitled to qualified immunity, the Court

must consider (1) whether the official's conduct violated a constitutional right, and (2) whether

that right was clearly established at the time of the incident. *Pearson*, 555 U.S. at 232. Courts are

not required to address the two qualified immunity issues in any particular order, and instead may

"exercise their sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. With respect to the second prong of the qualified immunity analysis, the Supreme Court has recently held that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent . . . placed the statutory or constitutional question beyond debate." *City and County of San Francisco, Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (omission in original) (internal quotation marks omitted). This is an "exacting standard" which "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

Although it is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly established, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality, *see White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). *See also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (plaintiff need not find case with identical facts, but the further afield existing precedent lies the more likely that official's acts fall within vast zone of conduct that is constitutional).

### 2. Sergeant Davis

Sergeant Davis argues that he is entitled to qualified immunity because he could not have known that he was violating a constitutional right when he processed Plaintiff's property request without issuing Plaintiff's property; because there is no clearly established law that an inmate's right to prosecute a negligence case overrides prison property regulations; and because, to the extent that Sergeant Davis's actions caused Plaintiff to miss his appeal deadline, Sergeant Davis's actions were legally reasonable. Dkt. No. 10 at 18–19.

The Court finds that Sergeant Davis is entitled to qualified immunity because, at the time that Sergeant Davis processed Plaintiff's property requests, there was no clearly established law that established "beyond debate" that the conduct alleged (accepting Plaintiff's allegations as true) violated the Constitution. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1863, 1866 (2014) ("under either

prong [of the qualified immunity analysis], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment"). The only factual allegations in the amended complaint regarding Sergeant Davis are the following: (1) on July 8, 2015, and on August 25, 2015, Plaintiff submitted property requests to Sergeant Davis wherein he specified that he needed his property to comply with a July 12, 2015 court deadline; (2) Sergeant Davis forwarded the requests to Sergeant Chandler; and (3) Sergeant Davis did not ensure the timely delivery of Plaintiff's property. The crux of Plaintiff's argument is that Sergeant Davis should have ensured him access to the courts by personally locating and delivering Plaintiff's property. At the time of Sergeant Davis's alleged actions and inaction, it was not clearly established that a prison officer was required to take the steps Plaintiff alleges he should have taken. Even now, to the Court's knowledge, there is no published Supreme Court or Ninth Circuit law that requires a prison official who knows of a prisoner's court deadline to take particular affirmative steps to track down the prisoner's property to assist the prisoner in meeting the deadline. *See Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 990 (9th Cir. 2014) (defendants are not liable for violation of right that was not clearly established at time violation occurred).

Plaintiff argues that the right to access the court was clearly established by the Supreme Court in *Bounds v. Smith*, 430 U.S. 817 (1977), and *Lewis v. Casey*, 518 U.S. 343 (1996). Dkt. No. 17 at 22. But defining the allegedly clearly established right at this level of generality does not comply with the unambiguous instructions of the Supreme Court. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."). Plaintiff has emphasized that he is alleging an "active interference" claim, Dkt. No. 17 at 19, and neither *Bounds* nor *Lewis* addresses the right to litigate without active interference. *Bounds* established prisoners' right to affirmative assistance, holding that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners

11

with adequate law libraries or adequate assistance from persons trained in the law." [2] *Bounds*, 430 U.S. at 828. In *Lewis*, the Supreme Court did not did not speak to a prisoner's right to litigate without unreasonable interference, but rather limited the right to affirmative assistance to the pleading stage. *Silva*, 658 F.3d at 1103.

It is unclear whether a court may consider binding circuit precedent in determining clearly established law. The Ninth Circuit has defined "clearly established law" as Supreme Court and circuit precedent. *See Community House, Inc. v. Bieter*, 623 F.3d 945, 967 (9th Cir. 2010) ("To determine whether a right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act.") (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)); *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004) (same). In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Supreme Court relied on circuit precedent in finding that the defendants were entitled to qualified immunity, specifically that the defendants' conduct violated clearly established law in light of binding circuit precedent. *Hope*, 536 U.S. at 741–45 ("in light of binding Eleventh Circuit precedent, an Alabama Department of Corrections (ADOC) regulation, and a DOJ report informing the ADOC of the constitutional infirmity in its use of the hitching post, we readily conclude that the respondents' conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known.") (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).). In recent cases, the Supreme Court has assumed for the sake of argument without explicitly holding that "controlling Court of Appeals' authority could be a dispositive source of clearly established law," *Reichle v. Howards*, 132 S.Ct. 2088, 2094 (2012); *see also Carroll v. Carman*, 135 S.Ct. 348, 350 (2014), but neither of these cases has overruled *Hope* or called its exclusive reliance on circuit precedent into question.

Regardless, circuit precedent also fails to establish that the conduct alleged violated clearly established law. The Ninth Circuit did recognize a First Amendment right to access the courts

---

[2] The right to affirmative assistance to access to the courts is limited to prisoners' pursuits of non-frivolous claims concerning their conviction and non-frivolous § 1983 claims challenging the conditions of their confinement. *See Lewis*, 518 U.S. at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

without interference in *Silva v. Di Vittorio*:

> This right [to access the courts without interference] does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from "erect[ing] barriers that impede the right of access of incarcerated persons."

*Silva*, 658 F.3d at 1102. The Ninth Circuit held that this right applied to all civil actions with a reasonable basis in law or fact, and applied beyond the pleading stage. *Silva*, 658 F.3d at 1102–03. However, the First Amendment right recognized in *Silva* is clearly distinguishable from the instant action in that the defendants in *Silva* allegedly acted with malicious intent in that they transferred the prisoner between different facilities and seized and withheld his legal files to hinder the prisoner's ability to litigate pending civil lawsuits. *Id.* at 1101–04 (finding that these alleged facts sufficiently stated a First Amendment claim to survive motion to dismiss). *Silva* is also distinguishable in that the inmate-plaintiff was allegedly denied access to the courts because of the defendants' actions, while in the instant action, it is Defendants' inaction that Plaintiff alleges caused the constitutional violation. At most, *Silva* clearly establishes that a prisoner has a right to litigate without prison officials engaging in affirmative, malicious interference. It does not address whether prison officials have an obligation to take affirmative steps to assist a prisoner in meeting his court deadlines by personally undertaking to locate missing property.

Plaintiff cites a number of additional cases that he argues clearly establish that Sergeant Davis should have taken affirmative steps to locate and deliver his property, or otherwise assist him in meeting his court deadline. Even assuming that it may look to these cases in determining whether the law was clearly established, the Court disagrees. Plaintiff argues that *Williams v. I.C.C. Committee*, 812 F. Supp. 1029, 1032 (N.D. Cal. 1992), establishes that the denial of access to legal documents prepared by a *pro se* inmate constitutes a First Amendment violation. Dkt. No. 17 at 19. However, *Williams* holds only that the allegation that an inmate has been deprived of his legal papers and that this deprivation made him miss a deadline to file an amended complaint states a cognizable First Amendment claim. *Williams* does not place beyond debate the constitutional question as to whether a prison official's failure to take particular affirmative steps to personally locate missing property to assist an inmate in meeting his court deadline violates the First Amendment.

Plaintiff argues that *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986), also clearly establishes that prison officials must take affirmative steps to assist an inmate in meeting his court deadline. However, similar to *Silva*, *Jackson* only establishes that an inmate has a right to be free from deliberate and malicious interference with his access to the courts. The *Jackson* court found that the allegation that prison officials intentionally delayed the mailing of the inmate's *in forma pauperis* filing, thereby causing dismissal of his case, stated a cognizable First Amendment claim at the pleading stage. The *Jackson* court specified that this holding applied only to intentional conduct, and not to something less than intentional conduct, such as recklessness or gross negligence. *Jackson*, 789 F.2d at 312. *Jackson* also does not place beyond debate the constitutional question as to whether a prison official's failure to take particular affirmative steps to personally locate missing property to assist an inmate in meeting his court deadline violates the First Amendment.

Plaintiff also argues that Sergeant Davis disregarded and violated clearly established CDCR regulations and therefore acted both unreasonably, citing to *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015), and incompetently, citing to *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Dkt. No. 17 at 22–24. In other words, Plaintiff argues that because Sergeant Davis' actions and inactions violated CDCR regulations, Sergeant Davis is not entitled to qualified immunity because the doctrine of qualified immunity shields officials from civil liability only if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Mullenix*, 136 S. Ct. at 308, and because qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law," *Malley*, 475 U.S. at 341. To the extent that Plaintiff bases his First Amendment claim on violations of prison regulations, such violations cannot be remedied under § 1983 unless they also violate a federal constitutional or statutory right. *See Davis v. Scherer*, 468 U.S. 183, 192 (1984) (§ 1983 provides no redress for prison officials' violation of state prison regulations); *see also Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for violation of federal law); *Lovell v. Poway Unified Sch. Dist.*, 90

14

F.3d 367, 370–71 (9th Cir. 1996) (federal and state law claims should not be conflated; to the extent the violation of a state law amounts to a deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress). "[S]tate officials [do not] lose their immunity by violating the clear command of a statute or regulation—of federal or state law—unless that statute or regulation provides the basis for the cause of action sued upon." *See Davis*, 468 U.S. at 194 n.12.[3]

Accordingly, Sergeant Davis is entitled to qualified immunity, and his motion to dismiss is GRANTED. The Court DISMISSES with prejudice the First Amendment claim against Sergeant Davis.

### 3.    Sergeant Chandler

Sergeant Chandler argues that he is entitled to qualified immunity because he could not have known that his responses to Plaintiff's property requests would violate Plaintiff's rights; and because there is no clearly established law that an inmate's mere contention to a prison official that the inmate has a court deadline gives rises to an affirmative duty. Dkt. No. 10 at 19. Plaintiff argues that Sergeant Chandler's position as an officer in PBSP Receiving & Release rendered him responsible for issuing Plaintiff his property upon Plaintiff's request. Dkt. No. 17 at 24.

The Court finds that Sergeant Chandler is entitled to qualified immunity because, at the time that Sergeant Chandler processed Plaintiff's property requests, there was no clearly established law that required a prison official who knew of a prisoner's court deadline to take particular affirmative steps to personally track down the prisoner's property to assist the prisoner in meeting the deadline. The only factual allegations in the amended complaint regarding Sergeant Chandler are the following: (1) that he responded to Plaintiff's July 8, 2015 property request by advising Plaintiff that PBSP had not yet received his property and by advising Plaintiff

---

[3] In addition, in arguing that the regulations imposed a duty to ensure Plaintiff's access to the courts, Plaintiff's argument is tantamount to an action for private enforcement of these particular prison regulations. The Court is unaware of any authority for the proposition that a plaintiff has a private right of action to enforce a prison regulation, *see Gonzaga University v. Doe*, 536 U.S. 273, 283–86 (2002) (basing a claim on an implied private right of action requires a showing that the statute both contains explicit rightscreating terms and manifests an intent to create a private remedy), and Plaintiff offers no authority recognizing such a right of private enforcement.

United States District Court
Northern District of California

to submit a property request to his prior facility; and (2) that he responded to Plaintiff's August 25, 2015 property request by informing Plaintiff that PBSP was working to resolve the issue and that he was unable to provide an estimate as to when Plaintiff would receive his property. The crux of Plaintiff's argument is that Sergeant Chandler should have ensured him access to the courts by personally locating and delivering Plaintiff's property. As discussed above, at the time of Sergeant Chandler's actions or inaction, there was no published Supreme Court or Ninth Circuit law requiring a prison official who knew of a prisoner's court deadline to take particular affirmative steps to track down the prisoner's property to assist the prisoner in meeting the deadline. *See Brown*, 751 F.3d at 990. Accordingly, Sergeant Chandler is entitled to qualified immunity, and his motion to dismiss is GRANTED. The Court DISMISSES with prejudice the First Amendment claim against Sergeant Chandler.

### 4. Analyst Bramucci

Analyst Bramucci argues that she is entitled to qualified immunity because her actions were based on the procedures for reviewing administrative grievances, and because there is no clearly established law that an inmate's contention to a prison official that the inmate has a court deadline gives rise to an affirmative duty to override administrative grievance procedures. Dkt. No. 10 at 19–20. Plaintiff argues that Analyst Bramucci's actions violated the procedures for reviewing administrative grievances when she failed to process his appeal of the cancellation of his inmate appeal at PBSP and instead forwarded it to PVSP; and when she failed to instruct PBSP Receiving and Release personnel to issue Plaintiff's property. Dkt. No. 17 at 25–26.

The relevant allegation in the amended complaint regarding Analyst Bramucci is that when, on August 2, 2015, Plaintiff submitted an appeal of Analyst Vierra's cancellation of Plaintiff's PVSP grievance and complained that his court deadline had passed and that CDCR officials had not provided him an affidavit to excuse the late filing, Analyst Bramucci forwarded the grievance back to PVSP even though Plaintiff's property was at PBSP. Here, Plaintiff informed Analyst Bramucci that he had missed a deadline, not that he had a pending deadline. The crux of Plaintiff's argument is that his right to access the courts required Analyst Bramucci to personally locate his legal documents after the filing deadline.

The Court finds that Analyst Bramucci is entitled to qualified immunity because, at the time that Analyst Bramucci processed Plaintiff's grievances and appeals, there was no clearly established law that either (1) required a prison official to personally take particular affirmative steps to track down a prisoner's legal property to assist the prisoner in meeting court deadlines, or (2) required a prison official to personally take particular affirmative steps to locate and deliver a prisoner's legal property where the court deadline had passed. As discussed *supra*, while there is a clearly established First Amendment right to access the courts without active interference, there is no clearly established companion right to affirmative assistance from prison officials to meet court deadlines. Similarly, there is no clearly established companion right to affirmative assistance from prison officials to locate and deliver legal documents needed for a court deadline that has already passed.

Accordingly, Analyst Bramucci is entitled to qualified immunity, and her motion to dismiss is GRANTED. The Court DISMISSES with prejudice the First Amendment claim against Analyst Bramucci.

### 5. Analyst Vierra

Analyst Vierra argues that she is entitled to qualified immunity because her actions in addressing Plaintiff's grievances did not violate a constitutional right of which a reasonable person should have known. Dkt. No. 10 at 20. Plaintiff argues that Analyst Vierra violated prison rules and regulations when she failed to forward Plaintiff's property appeal to PBSP after she learned that Plaintiff's property had arrived at PBSP; when she failed to instruct PBSP grievance analysts to timely issue his property; and when she canceled Plaintiff's property appeal instead of instructing Plaintiff to resubmit the appeal to the PBSP Appeals Coordinator for second level review. Dkt. No. 17 at 26–27.

The relevant allegations in the amended complaint regarding Analyst Vierra are the following: (1) that she learned on July 20, 2015 that Plaintiff's property had arrived at PBSP and cancelled Plaintiff's grievance on July 21, 2015, but failed to instruct PBSP prison officials to timely deliver his property; and (2) that she cancelled Plaintiff's appeal on August 13, 2015. Here, Plaintiff informed Analyst Vierra that his filing deadline had passed on July 12, 2015. The crux of

Plaintiff's argument is that his right to access the courts required Analyst Vierra to personally locate his legal documents after the filing deadline.

The Court finds that Analyst Vierra is entitled to qualified immunity because, at the time that Analyst Vierra processed Plaintiff's grievances and appeals, there was no clearly established law that either (1) required a prison official to personally take particular affirmative steps to track down a prisoner's legal property to assist the prisoner in meeting court deadlines, or (2) required a prison official to personally take particular affirmative steps to locate and deliver a prisoner's legal property where the court deadline had passed. As discussed *supra*, while there is a clearly established First Amendment right to access the courts without active interference, there is no clearly established companion right to affirmative assistance from prison officials to meet court deadlines. Similarly, there is no clearly established companion right to affirmative assistance from prison officials to locate and deliver legal documents needed for a court deadline that has already passed.

Accordingly, Analyst Vierra is entitled to qualified immunity, and her motion to dismiss is GRANTED. The Court DISMISSES with prejudice the First Amendment claim against Analyst Vierra.

### 6. Sergeant Hazel

Sergeant Hazel argues that he is entitled to qualified immunity because a reasonable officer in his position would not have known that his actions in transporting Plaintiff to PBSP would violate Plaintiff's right to access the courts. Dkt. No. 25 at 18. Plaintiff argues that a reasonable officer would have understood that prison regulations required Sergeant Hazel to (1) transport an inmate's property on the same bus as the inmate when the prison officer had been informed that the property contains legal documents; and (2) to make an effort to resolve the missing property issue by contacting the relevant parties and ensuring the immediate transfer and release of the inmate's property. Dkt. No. 29 at 7 and 14–15. Specifically, Plaintiff argues that a reasonable officer would have contacted PVSP officials and arranged for Plaintiff's property to be timely shipped to PBSP. *Id.* at 7.

The Court finds that Sergeant Hazel is entitled to qualified immunity because, at the time

18

that Sergeant Hazel transported Plaintiff to PBSP, there was no clearly established law that established "beyond debate" that the conduct alleged (accepting Plaintiff's allegations as true, *see Tolan*, 134 S. Ct. at 1863, 1866) violated the Constitution. The relevant allegations in the amended complaint regarding Sergeant Hazel are as follows: (1) Sergeant Hazel made the decision to leave Plaintiff's property at PVSP rather than transporting it on the same bus as Plaintiff; and (2) when informed on July 7, 2015 that Plaintiff's property contained legal documents, Sergeant Hazel did not personally locate and deliver the property, and only suggested that Plaintiff file an appeal. The crux of Plaintiff's argument is that Sergeant Hazel should have ensured him access to the courts by either (1) ensuring that Plaintiff's property was transferred on the same bus as Plaintiff or (2) personally locating and delivering Plaintiff's property. At the time of Sergeant Hazel's alleged actions and inaction, it was not clearly established that a prison officer was required to take the steps Plaintiff alleges he should have taken. As discussed *supra*, there is no published Supreme Court or Ninth Circuit law that requires a prison official who knows of a prisoner's court deadline to take particular affirmative steps to track down the prisoner's property to assist the prisoner in meeting the deadline. *See Brown*, 751 F.3d at 990. Accordingly, Sergeant Hazel is entitled to qualified immunity, and the Court DISMISSES with prejudice the First Amendment claim against Sergeant Hazel.

**D.      Due Process Claim**

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 570–71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995). Interests that are procedurally protected by the Due Process Clause may arise from two sources — the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223–27 (1976). Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the

19

liberty in question is one of "real substance." *Sandin v. Conner*, 515 U.S. 472, 477–87 (1995). Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487.

Sergeant Hazel argues that Plaintiff has not alleged that he was deprived of a constitutionally protected liberty interest, and that Plaintiff cannot show a constitutionally protected right to have his property transported on the same vehicle as his person for the following reasons. First, Sergeant Hazel argues that, to the extent that Plaintiff had a property interest in his NOA, this property interest arose from his right to access the courts. If Plaintiff cannot state a First Amendment violation, Plaintiff also fails to state a claim for a due process violation. Second, Sergeant Hazel argues that Plaintiff had no liberty or property interest in having his property transferred with him, and that there was therefore no duty to afford Plaintiff a hearing before deciding to delay the transfer of Plaintiff's property. Dkt. No. 25 at 16–17. Finally, Sergeant Hazel argues that, in the alternative, he is entitled to qualified immunity. *Id.* at 17–19.

Plaintiff argues that the delay in transferring his property states a due process claim under § 1983 because it constituted a constructive deprivation of property that was authorized and deliberate, citing to *Parratt v. Taylor*, 451 U.S. 527, 535–44 (1981). He argues that Sergeant Hazel's decision to delay transfer of his property was authorized because Sergeant Hazel was "acting under the authority of a Sergeant responsible for transporting California State Prison inmates, and their property," and that the decision was not random because Sergeant Hazel knew that "there were established procedures where Plaintiff's property would be transported to Pelican Bay State Prison . . . . at a later time." Dkt. No. 29 at 13. He also argues that Sergeant Hazel could "easily predict that Plaintiff had legal materials within his property, and quite possibly a court deadline," and that Sergeant Hazel therefore had a "meaningful opportunity" to "simply ask Plaintiff if his property contained any legal materials pertaining to an active case with an impending deadline." *Id.* at 13.

The Court finds that Sergeant Hazel is entitled to qualified immunity. At the time that Sergeant Hazel transported Plaintiff to PBSP, there was no clearly established law that required a

prison official transporting a prisoner to affirmatively ask the prisoner if his property contained any documents pertaining to active cases with upcoming deadlines. There is no published Supreme Court or Ninth Circuit law imposing such a duty on prison officials. Rather, the governing caselaw at that time, which continues to be good law, clearly found no due process interest in a prisoner's legal documents. In *Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir. 1996), the Ninth Circuit found that although a jail regulation required prison officials to search legal documents in the presence of the prisoner, the defendant-prison official's violation of this rule did not violate the prisoner's due process rights because the search was not an atypical, significant hardship in relation to the ordinary incidents of prison life. 75 F.3d at 523. The case cited by Plaintiff, *Parratt v. Taylor*, 451 U.S. 527, 535–44 (1981), is not good law. *Parratt* has long been overruled by *Daniels v. Williams*, 474 U.S. 327 (1986), which held that that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of property. 474 U.S. at 664–65. Accordingly, Sergeant Hazel is entitled to qualified immunity, and the Court DISMISSES with prejudice the due process claim against Sergeant Hazel.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss filed by Sergeant Davis, Sergeant Chandler, Analyst Bramucci, and Analyst Vierra, Dkt. No. 10; and GRANTS the motion to dismiss filed by Sergeant Hazel, Dkt. No. 25. The Court DISMISSES the amended complaint with prejudice.

The Clerk shall terminate Docket Nos. 10 and 25; enter judgment in favor of Defendants; and close the file.

**IT IS SO ORDERED.**

Dated: 9/25/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge